1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7           FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                          OAKLAND DIVISION
9

10   RICHARD O'NEAL DEAN,                    Case No:  C 11-1098 SBA (pr)

11            Plaintiff,                     **ORDER GRANTING
                                             DEFENDANTS' MOTION FOR
12       vs.                                 SUMMARY JUDGMENT**

13   OFFICER TIM ALLEN, et al.,              Dkt. 29

14            Defendants.

15

16

17          Plaintiff Richard O'Neal Dean, a former state prisoner, has filed a pro se civil rights

18   action, pursuant to 42 U.S.C. § 1983, in which he alleges that his Fourth Amendment rights

19   were violated during the course of a traffic stop which occurred on October 21, 2005.  The

20   named defendants are Contra Costa County Sheriff's Deputies David Hall and Tim Allen.

21   The parties are presently before the Court on Defendants' Motion for Summary Judgment.

22   Dkt. 29.  The motion is unopposed.  Having read and considered the papers filed in

23   connection with this matter and being fully informed, the Court hereby GRANTS the

24   motion for the reasons set forth below.  The Court, in its discretion, finds this matter

25   suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ.

26   L.R. 7-1(b).

27

28

# I.    BACKGROUND

## A.    FACTUAL SUMMARY

### 1.    The Traffic Stop

On Thursday, October 21, 2005, Deputy Hall, accompanied by his partner, Deputy Westerman, was patrolling the streets of Bay Point in a marked vehicle.  Hall Decl. ¶¶ 2, 3, Dkt 30.  At approximately 3:54 p.m., Deputy Hall observed a white Oldsmobile Silhouette minivan with darkly-tinted windows and expired registration tabs turn left onto Willow Pass Road.  Id. ¶ 4.  Deputy Hall followed the vehicle, activated his lights and flashers, and initiated a traffic stop based on the lack of a registration tab.  Id.  Due to the minivan's tinted windows, Deputy Hall did not observe a temporary operating permit in the rear window of the vehicle.  Id. ¶ 5.

After pulling the vehicle over, Deputy Hall made contact with the driver, who was later identified as the Plaintiff.  Id. ¶ 6.  Deputy Hall asked Plaintiff to present his driver's license and the registration for the vehicle.  Plaintiff responded that his license was suspended or revoked.  Id. ¶ 7.  Because driving without a license is a violation of California Vehicle Code section 14601.1(a), Deputy Hall decided to detain Plaintiff and arrest him for that offense.  Id.  Deputy Hall observed that Plaintiff's hands were shaking and that he frequently broke eye contact and appeared to be nervous.  Id. ¶ 9.  Deputy Hall inquired whether he had anything illegal on his person.  Id. ¶ 10.  Plaintiff replied that he did not.  Id.  Deputy Hall then asked Plaintiff if he would "mind if I searched his person and his vehicle."  Id.  Plaintiff replied, "no," exited the vehicle and turned to face away from Deputy Hall with his hands in the air.  Id.

Deputy Hall conducted a search of Plaintiff's person and found a clear plastic baggy which contained a piece of an off-white rock substance which appeared to Deputy Hall to be rock cocaine.  Id. ¶ 11.  Deputy Hall placed the baggy containing the substance on the roof of the van and told Plaintiff to put his hands behind his back.  Id. ¶¶ 11, 12.  Plaintiff initially complied, but then, as Deputy Hall reached for his handcuffs, Plaintiff broke free of Deputy Hall's grip, grabbed the baggy, threw it toward a woman (later identified as

Plaintiff's wife) standing in the parking lot and yelled for her to dispose of it.  Id. ¶¶ 12, 13.
The baggy was secured by a local security officer and Plaintiff was eventually placed in
handcuffs.  Id. ¶ 14.

After Plaintiff was secured, a further search of his person revealed a round plastic
container of Icebreaker Mints which held thirty-three baggies containing an off-white
substance that appeared to be rock cocaine. Id. ¶ 15.  Plaintiff also was found to be in
possession of marijuana and $320.00 in cash.  Id. ¶ 16.  Deputy Hall informed Plaintiff that
he was arresting him on the following charges: (1) driving without a valid license, Cal.
Veh. Code § 14601.1(a); (2) resisting an officer in the performance of his duties, Cal. Pen.
Code § 148; and (3) possession of illegal drugs for sale, Cal. Health and Safety Code §§
11351.5, 11352.  Id. ¶ 17.

### 2.  Motion to Suppress and Conviction

After Plaintiff was criminally charged, he filed a motion to suppress the contraband
Deputy Hall had seized on the ground that the original traffic stop was made without
probable cause.   At the suppression hearing, the parties agreed that Plaintiff's minivan had
expired registration tabs, but that a temporary operating permit issued by the Department of
Vehicles was displayed on the minivan's rear window.  However, the Court credited
Deputy Hall's testimony that he did not actually see the permit mounted inside of the
minivan's rear window.  The trial court noted that the temporary operating permit was
difficult to observe through the dirty, reflective glass and that it was not in its required
location in the lower right corner of the rear window.  Thereafter, Plaintiff pled no contest
pursuant to a negotiated disposition and appealed the denial of his motion to suppress to the
California Court of Appeal.

### 3.  Court of Appeal's Reversal of the Conviction

On December 21, 2007, the California Court of Appeal reversed Plaintiff's
conviction, holding that the State had failed to meet its burden of proving that there was an
articulable and reasonable suspicion that Plaintiff committed a traffic violation based on the
facts and circumstances known to the officer at the time of the traffic stop.  See People v.

1   <u>Dean</u>, 69 Cal. Rptr. 3d 770 (2009).  In reaching its decision, the court of appeal noted that

2   "[Deputy] Hall needed to look for a temporary operating permit as he followed the minivan

3   in order to be able to form a reasonable suspicion that the minivan was not properly

4   registered."  <u>Id.</u> at 780.  The court noted that Deputy Hall made no effort to look for a

5   temporary permit, and admitted that he would have stopped the van even if he had seen

6   one.  <u>Id.</u>  In addition, the court found that the evidence that the temporary permit was

7   obscured was inconsequential without "the prosecution establishing that Hall at least

8   attempted to look for the temporary operating permit in the first place."  <u>Id.</u> at 782.

9       On April 21, 2009, the Contra Costa County Superior Court issued an order

10  dismissing the criminal charges against Plaintiff.  Comp. Ex. 1.  The dismissal order stated

11  that, pursuant to the Court of Appeal's decision, all evidence seized in the search of the

12  minivan was suppressed and that the district attorney had concluded that it could not

13  proceed against Plaintiff without the suppressed evidence.  <u>Id.</u>

14      **B.   PROCEDURAL HISTORY**

15      On March 8, 2011, Plaintiff filed the instant action in this Court against Deputy Hall

16  and Deputy Allen.  On June 13, 2012, Defendants filed a motion for summary judgment.

17  Dkt. 29.[1]  Plaintiff failed to file a response within sixty days of the filing of the motion, as

18  required by the Court's Order of Service.  Dkt. 21.  Thus, on September 24, 2012, the Court

19  issued an order providing Plaintiff with additional instructions for opposing Defendants'

20  summary judgment motion, and directed Plaintiff to file his opposition by October 22,

21  2012.  Dkt. 41.  To date, however, Plaintiff has not filed an opposition.  Briefing on the

22  motion is now closed and the motion is now ripe for adjudication.

23  **II.   LEGAL STANDARD**

24      Federal Rule of Civil Procedure 56 provides that a party may move for summary

25  judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.

26  _____

27      [1] At the time Plaintiff filed his complaint, he was incarcerated at San Quentin State
    Prison. Dkt. 1.  On May 22, 2012, Plaintiff filed a notice of change of address, which
    indicated a new mailing address in Pittsburg, California. Dkt. 28.  Defendants served their
28  motion papers on Plaintiff at his new address. Dkt. 36.

56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III.   DISCUSSION

### A.   DEPUTY ALLEN

To establish individual liability under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009).  "Liability under section 1983 arises only upon a showing of personal participation by the defendant." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).  Here, the uncontroverted evidence demonstrates that, at the time of the traffic stop, Deputy Allen was in Idaho.  Since Deputy Allen was not present in California at the time of the incident, it follows then that he could not have personally participated in the traffic stop that forms the basis of the action.  Accordingly, Defendants' motion for summary judgment as to Deputy Allen is GRANTED.

### B.   QUALIFIED IMMUNITY

Alternatively, Defendants argue that they are entitled to qualified immunity. Qualified immunity protects officers from liability for civil damages where their alleged unconstitutional conduct does not violate a clearly established right.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).  An officer is entitled to qualified immunity unless (1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>modified by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 233 (2009)).  A court may dispose of a qualified immunity issue by addressing step two, without first addressing step one.  <u>Pearson</u>, 555 U.S. at 236.  With respect to whether a right was "clearly established," the Supreme Court has counseled that the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier</u>, 533 U.S. at 202 (internal quotations and citation omitted).

Here, the Court finds that the right asserted by Plaintiff was not clearly established at the time of the traffic stop in 2005.  It has long been the rule that a law enforcement official may conduct a traffic stop based on a traffic violation.  <u>See</u> <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996).  The absence of a registration tab on a rear license plate is a violation

1    of the California Vehicle Code[2] and may therefore justify an investigatory stop.  See

2    Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (noting that expired registration tags

3    justified initial stop).  The Court of Appeal presiding over Plaintiff's appeal recognized as

4    much, but held that the State could not show that the deputies had a reasonable suspicion

5    upon which to stop the Plaintiff under the specific circumstances presented; i.e., the lack of

6    evidence that Deputy Hall looked for a temporary permit before making the stop, coupled

7    with his admission that he would have stopped Plaintiff's vehicle regardless of whether he

8    saw a temporary permit.  Dean, 69 Cal. Rptr. 3d at 779.

9         Irrespective of the Court of Appeal's decision on Plaintiff's motion to suppress, it is

10   readily apparent that, at the time of the incident, the law regarding an officer's obligation to

11   look for a temporary operating permit (in the absence of a vehicle's registration tab) was

12   not clearly established.  See People v. Saunders, 38 Cal.4th 1129, 1135 (2006) ("we have

13   not yet decided whether an officer may stop a vehicle that has an expired registration tab

14   but also displays a temporary operating permit.").  Indeed, it was not until 2008, several

15   years after the underlying incident, that the California Supreme Court first held that an

16   officer may not disregard a temporary permit in the course of ascertaining whether there is

17   reasonable suspicion to conduct an investigatory stop.  See People v. Hernandez, 45 Cal.4th

18   295, 297 (2008) ("An officer who sees a vehicle displaying a temporary operating permit in

19   lieu of license plates may not stop the vehicle simply because he or she believes that such

20   permits are often forged or otherwise invalid. To support a stop the officer must have a

21   reasonable suspicion that the particular permit is invalid.").  Thus, the Court is persuaded

22   that the law regarding an officer's duty to ascertain whether a vehicle with missing

23   registration tabs had a temporary operating permit before conducting a traffic stop was not

24   clearly established as of October 21, 2005, such that a reasonable officer would not know

25

26         [2] California Vehicle Code section 4000(a)(1) requires a vehicle operating on the
     public highway be currently registered.  Vehicle Code section 4601(a) requires the
27   vehicle's registration be renewed annually prior to the expiration of the registration year.
     Vehicle Code section 5204(a) requires current registration tags to be displayed on the rear
28   license plate.

that disregarding the potential presence of a temporary permit in lieu of a missing registration tab would violate the Fourth Amendment.  See Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011) ("existing precedent must have placed the statutory or constitutional question *beyond debate*.") (emphasis added).[3]

## IV.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.   Defendants' motion for summary judgment is GRANTED.

2.   The Clerk shall enter judgment for Defendants, close the file, and terminate any pending matters.

3.   For the reasons stated above, the Court certifies that any appeal from this decision would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: February 21, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[3] In light of the Court's conclusion that Defendants are entitled to qualified immunity, the Court does not reach their contention that Plaintiff's claims are barred by the statute of limitations.

1

2

3   UNITED STATES DISTRICT COURT
    FOR THE
4   NORTHERN DISTRICT OF CALIFORNIA

5

6   RICHARD ONEAL DEAN,

7               Plaintiff,

8     v.

9   CONTRA COSTA COUNTY SUPERIOR
    COURT et al,
10

11              Defendant.
    _____/
12

13                                    Case Number: CV11-01098 SBA

14                                    **CERTIFICATE OF SERVICE**

15

16  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.
17

18  That on February 22, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
19  said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
    located in the Clerk's office.
20

21

22

23  Richard Oneal Dean
    2262 Concord Dr.
24  Pittsburg, CA 94565

25  Dated: February 22, 2013

26                                    Richard W. Wieking, Clerk

27                                         By: Lisa Clark, Deputy Clerk

28
                                    - 9 -

1

2

3

4

5

6

7

8

9   G:\PRO-SE\SBA\CR.11\11-1098 - Dean - Order Granting MSJ.docx

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28